<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE RCN LITIGATION

MASTER FILE NO. 04-5068 (SRC)

**OPINION**

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on Defendant Merrill Lynch Trust Company FSB's ("MLTC") Motion to Dismiss Plaintiff's Consolidated Complaint (docket entry # 41). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendant's Motion.

**I.   BACKGROUND OF THE CASE**

The Plaintiffs in these consolidated cases are current or former participants in RCN Corporation's ("the Company") Savings and Stock Ownership Plan (the "Plan"), and a class of all others similarly situated, during the period between January 12, 1999 through December 21, 2004 (the "Class Period").  The Plan was a defined contribution "employee pension benefit plan," within the meaning of ERISA.  29 U.S.C. § 1002(2)(A).  The Plan was managed by an Administrative Committee (the "Committee") that was comprised of RCN employees appointed

1

by the Company to administer the Plan on their behalf.  MLTC was appointed by the Committee

to act as the trustee for the Plan.  The Plaintiffs brought suit against various defendants, including

RCN Corporation, various RCN directors, officers, and employees, members of the RCN

Compensation Committee and Administrative Committee, as well as MLTC (collectively

"Defendants").

       The Plaintiffs' investment portfolios in the Plan all included RCN stock.  The Plaintiffs

are claiming that the Defendants breached their fiduciary duties owed to the Plaintiffs by

continuing to offer RCN common stock as a Plan investment option for participant contributions,

using RCN securities for employer contributions to the Plan, and maintaining heavy investment

in RCN securities when the stock was "no longer a prudent investment for the Plan."  (Compl. at

2, ¶ 5.)  The Plaintiffs also claim that certain Defendants, including MLTC, breached their

fiduciary duties by failing to provide material information regarding the imprudence of investing

Plan assets in RCN securities to other fiduciaries, failing to communicate "complete and accurate

information to the Plan participants" regarding the risks of investing in RCN stock, and

breaching their duty of loyalty to the Plan and its participants by failing to avoid "inherent

conflicts of interest."  (Compl. At 2-3, ¶¶ 6 - 8.)

       The Plan had both a 401(k) component and an Employee Stock Ownership Plan

("ESOP") component.  Participants could direct the investment of their individual contributions

into various investment options offered by the Plan, as selected by the Committee.  In 2003, the

Plan offered twenty-four mutual funds, one common collective trust, three "Global Manager"

predetermined portfolios, and the RCN Common Stock Fund as investment options which

participants could select.  Subject to statutory limitations, employees could contribute between

1% and 50% of their eligible compensation to the Plan on a pre-tax basis.  Plan participants could direct how their contributions would be allocated among the various investment options offered as part of the Plan.  The Plan also offered matching Employer ESOP contributions.  The Company matched employee contributions at a rate of 100% for the first 3.5% of participants' pre-tax contributions.[1]  The Company would also make profit sharing contributions to the accounts of participants, at the Company's discretion, which were placed into the ESOP portion of the plan.

By year 2000, RCN stock began to decline.  By December 21, 2000, RCN stock had fallen 90% from its Class Period high of $72/share to $6.06.  On September 26, 2003, the Committee modified the Plan's structure so that participants were no longer permitted to allocate any contributions to the RCN Stock Fund and also prohibited Plan participants from moving assets from other investments into the RCN Stock Fund (although previous contributions could remain in RCN stock).  After January 16, 2004, Company matching contributions were also no longer made in RCN stock, but were made in cash.  In May 2004, RCN stock was delisted from the NASDAQ.  On May 27, 2004, RCN filed for reorganization under Chapter 11.  When RCN announced its formal emergence from Chapter 11 on December 21, 2004, all outstanding shares of RCN stock, including those invested in the RCN Stock Fund, were cancelled.

## II. DISCUSSION

---

[1] These Company matching contributions vested on a sliding scale based on years of continuous service with the Company.  Employees with less than 2 years of service were 0% vested, from 2-3 years of service, they were 25% vested, etc....  Employees were 100% vested after five years of continuous service with the Company.

3

Defendant MLTC has moved to dismiss the claims against it under both FED. R. CIV. P. 12(b)(1) and 12(b)(6).  MLTC's Rule 12(b)(1) motion challenges the standing of five of the six named Plaintiffs to sue under both Article III and ERISA.  The Rule 12(b)(6) motion challenges the sufficiency of the Plaintiffs' Complaint to set forth a legally cognizable claim against MLTC for breach of any fiduciary duty under ERISA.  Because the Court finds sufficient cause to dismiss the Plaintiffs' complaint under Rule 12(b)(6), the Court need not address MLTC's Rule 12(b)(1) arguments regarding the standing of individual Plaintiffs in this case.[2]

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that all allegations in the Complaint must be taken as true and viewed in the light most favorable to the complainant.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). Resolution of these motions in no way indicates a predisposition by the Court of an issue of contested facts.  FED R. CIV PROC. 12(b)(6).  Where, as here, the Complaint at issue attaches or references various documents, the Court is not limited to reviewing the allegations set forth in the body of the Complaint in deciding a motion to dismiss.  The Court may properly consider these materials without the need to convert the motion into one for summary judgment.  See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (holding court may look to materials outside the complaint in deciding a 12(b)(6) motion where the claims in the complaint

---

[2] Because standing is a threshold jurisdictional issue, the Court would normally address this issue before any arguments on the merits of the Plaintiffs' claims.  See Miller v. Rite Aid Corp., 334 F.3d 335, 340 - 41 n.2 (3d Cir. 2003).  In the present case, however, MLTC concedes that at least one of the named Plaintiffs has standing, so a favorable ruling on these grounds would not result in dismissal of the case, and the Court would still need to address the merits regardless of the Court's finding on the standing issue.

"are expressly linked to-and admittedly dependent upon-a document"); Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document.").

A.     **The Plan's Governing Documents Demonstrate That MLTC Acted as a Directed**
       **Trustee**

Plaintiffs argue that MLTC had discretionary authority over the Plan's investments in the

RCN Stock Fund, citing to Plan literature that notes, while the RCN Stock Fund is invested

primarily in RCN common stock, it is "subject to the right of the trustee to invest this fund or any

part thereof in other instruments."[3]  (Compl. at 25, ¶ 99 (citing to Plan Prospectus attached as

---

[3] The Plaintiffs' Complaint attaches a document entitled "Trust Agreement" (the "Trust Agreement") which they allege defines the terms under which MLTC served as the Plan's trustee. (See Compl., Ex. B.)  It is worth noting that the attached Trust Agreement appears to be an agreement between Commonwealth Telephone Co. and Boston Safe Deposit and Trust Company, and neither RCN nor MLTC is a party to the agreement. (Id. at 18.)  At oral argument, MLTC admitted that there is no Trust Agreement specifically governing the relationship between MLTC and RCN which spells out the terms under which MLTC served as the Plan's trustee. Even if, however, the Trust Agreement submitted with the Plaintiffs' Complaint accurately defined the responsibilities MLTC had under the Plan's terms, it would not support the Plaintiffs' assertion that MLTC had a fiduciary responsibility for Plan investments because, as the Plan's trustee, MLTC had "exclusive authority and discretion to manage and control" the funds in the Plan. (Compl. at 25, ¶ 99 (quoting Trust Agreement, Article II, § 2.1.1)).  While the Plaintiffs acknowledge that ultimate responsibility for the Plan's assets lies with the Company and its delegates, they claim that MLTC was "vested with the duty and ability to take protective action regarding imprudent investment of the Plan's assets." (Id.)  The terms of the Trust Agreement offered by the Plaintiffs, however, demonstrate that MLTC was a directed trustee with *no* discretion over the investment of Plan assets.  This agreement shows that MLTC operated under a clear obligation to invest the Plan's assets in accordance with the directions provided by the Committee or individual Plan participants.  On the first page of the Trust Agreement, it expressly states that "the Employer desires to appoint the Trustee as a 'nondiscretionary trustee' (within the meaning of Section VI(g) of Prohibited Transaction Class Exemption 77-9 under Section 408(a)

Exhibit E).)  The Plan's operative document (the "Plan Document"), however, defines a rather

limited scope for this discretionary authority.  (<u>See</u> RCN 1087-88.)  The Plan Document, while

cited to by both parties in their papers regarding the current motion, is not specifically mentioned

or attached to the Plaintiffs' Complaint.  (<u>See</u> Pl. Br. at 26 (referring to the duties delineated for

MLTC in Section 4.4); Def. Br. at 6 (same).)  The contents of the Plan Document, however, are

necessarily at issue in the Plaintiffs' allegations and may properly be considered by the Court in

evaluating the present motion.  <u>See</u> <u>Weinter v. Klais and Co.</u>, 108 F.3d 86, 89 (6th Cir. 1997)

(holding that documents attached to a motion to dismiss are considered part of the pleadings if

they are referred to in the complaint and central to the claims); <u>Hogan v. Eastern Enters./ Boston</u>

<u>Gas</u>, 165 F.Supp.2d 55, 58 (D.Mass. 2001) (considering ERISA plan documents in ruling on

motion to dismiss).

---

of the Employee Retirement Income Security Act of 1974, as amended ('ERISA')) for the limited
purposes hereinafter set forth" and that "the Trustee desires to act as such a nondiscretionary
trustee." (Compl., Ex. B. at 1.)  While the Trust Agreement states that "the Trustee shall have
exclusive authority and discretion to manage and control the Trust Fund" this authority and
discretion is "at all times subject to the proper, written directions of the Committee." (<u>Id.</u>, Ex. B.,
at 2, Article II, § 2.1.1.)  Section 2.2 defines the authority to make investment decisions, vesting
this authority and discretion with the Committee, leaving MLTC, as the trustee, to "invest,
reinvest and dispose of the assets comprising the Trust Fund in accordance with the Committee's
Directions." (Id., Ex. B, at 3, Article II, § 2.2.)  MLTC similarly was required to defer to the
directions of the individual participants in determining how a participant's money is invested
among the various investment options offered under the Plan. (<u>Id.</u> at 2, Article II, § 2.1.1.)
Section 2.2 of the Trust Agreement expressly leaves MLTC, as the trustee, with "no duty
hereunder to review the investments held in the Trust Fund" and specifically prohibits them from
"mak[ing] suggestions or otherwise render[ing] investment advice to the Committee or any
Participant with respect to investment, reinvestment, or disposition of assets held in the Trust
Fund." (<u>Id.</u>)  While each party, under the terms of the Trust Agreement, agrees to discharge their
duties and responsibilities with appropriate "care, prudence, and diligence" (<u>id.</u> at 11, Article III,
§ 3.1.1(b)), MLTC, as the trustee, is specifically absolved of any duty "to question, or otherwise
inquire into, the performance of another fiduciary with respect to duties allocated to such other
fiduciary under the Plan." (<u>Id.</u> at 11, Article III, § 3.1.4.)

The Plan Document defines the discretionary investment power held by MLTC over investments in the RCN Stock Fund in Section 4.4.  (<u>See</u> RCN 1087-88.)  This section grants MLTC, as the Plan's trustee, authorization to "invest a portion of the contributions received [(for the RCN Stock Fund)] in other securities as a reserve for the payment of administrative expenses and cash distributions."  (<u>Id.</u>)  These securities "shall include short term obligations of the U.S. government, commercial paper, money market funds, savings instruments, certificates of deposit, repurchase agreements or other short term investments deemed prudent by the [t]rustee."  (<u>Id.</u>)

The Plaintiffs' argument that this language grants MLTC "control over Plan assets" and a requirement "to monitor at least a subset of these investments" is not convincing.  (Pl. Br. at 26.)  The Plaintiffs' are attempting to "infer a broad grant of discretionary investment authority from an explicitly narrow grant of authority for a limited purpose."  <u>DeFelice v. US Airways, Inc.</u>, 397 F.Supp.2d 735, 745 (E.D. Va. 2005) (rejecting similar argument to impose discretionary authority upon a plan trustee).  The Plan's governing documents do not grant MLTC discretionary authority over the investment of funds placed into the Plan.  This authority is expressly vested in the Committee and the Plan's participants.  Section 4.4 outlines a very limited and narrow exception to this general rule.

This exception, furthermore, is designed to serve only a very narrow purpose.  The cash component of the RCN Stock Fund is designed to permit MLTC to maintain "a reserve for the payment of administrative expenses and cash distributions," rather than provide an alternative investment option to act as a hedge against the performance of RCN stock.[4]  (RCN 1087.)

---

[4] The Plaintiffs' Complaint does not allege that MLTC breached any duty to the Plan participants related to its administration of the Plan, or that it failed to maintain sufficient reserves in the RCN Stock Fund to pay administrative expenses or cash distributions.  The basis

MLTC did not have authority under the Plan to divert investments away from the RCN Stock Fund at its discretion, but merely had the necessary authority needed to execute their duties as the Plan's trustee.  (Id.)  Such limited discretion is not beyond that given to a directed trustee.  See, In re WorldCom, Inc. ERISA Litig., 354 F.Supp.2d 423, 442 (S.D.N.Y. 2005) (noting that where trust agreement gives trustee additional powers as necessary to perform their nondiscretionary duties, this does not raise a question of fact as to whether trustee is a directed trustee).  The language of the documents governing the administration of the Plan and establishing the role of MLTC as the Plan's trustee affirm that MLTC was a directed trustee, pursuant to Section 403(a) of ERISA, 29 U.S.C. § 1103(a), who was subject to the directions of the Committee and individual Plan participants regarding the selection of investment options for Plan funds.

**B.      MLTC's Duties as a Directed Trustee**

As a directed trustee, MLTC had a limited fiduciary duty with respect to Plan investments.  See Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1102 (9th Cir. 2004) (holding directed trustee have limited fiduciary duties under ERISA); Srein v. Frankford Trust Co., 323 F.3d 214, 223 (3d Cir. 2003) ("When, as here, a trustee bank is entrusted with and performs duties to 'control, manage, hold, safeguard and account for [a] fund's assets and income,' it functions as a fiduciary under ERISA.") (quoting Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc., 237 F.3d 270, (3d Cir. 2001)).  In Re WorldCom, Inc. ERISA Litig., 354 F.Supp.2d at 444 (same); U.S.

---

of the Plainitffs' Complaint is that MLTC allowed the Plan participants to lose the value of their investments in RCN Stock by allowing such investments even though these investments were "clearly imprudent."  (Compl. at 24, ¶ 98.)

Dept. of Labor, Field Assistance Bulletin 2004-03 (Dec. 17, 2004) (a "trustee, therefore, will, by definition, always be a 'fiduciary' under ERISA as a result of its authority or control over plan assets") available at http://www.dol.gov/ebsa/regs/fab_2004-3.html (hereinafter "DOL Bulletin").  A directed trustee, under ERISA, can be relieved of "fiduciary obligations regarding the management and control of a plan's assets when the trustee is 'directed' by the plan's designated fiduciaries," leaving them "subject only to the 'proper directions' of the named fiduciary." Wright, 360 F.3d at 1102 (citing 29 U.S.C. § 1103(a)(1)). See also Landlone v. Textron, Inc., 369 F.3d 1, 7 (1st Cir. 2004) (noting limited fiduciary duty under ERISA for directed trustees).  Directed trustees can have fiduciary duties to the extent that they exercise control over a plan's assets, but this duty is extremely limited.  Srein, 323 F.3d at 222 (citing Smith v. Provident Bank, 170 F.3d 609 (6th Cir. 1999)).  Regarding the direction of investment of Plan assets in specific securities, as long as the directed trustee is required, by the Plan's terms, to follow the directions of a named fiduciary, their investment decisions are essentially "immune from judicial inquiry."  Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995).

While existing Third Circuit precedent under Moench and Srien leaves a directed trustee, like MLTC, with a very narrow fiduciary duty, other courts have recently begun to apply a slightly broader view of the fiduciary duties of a directed trustee.  Many of these courts have relied on recent guidance from the Department of Labor, where the Department defined the fiduciary role for a directed trustee.  See DOL Bulletin.  While a bulletin on this subject from the Department of Labor is not controlling, it is "entitled to respect" to the extent that it has the "power to persuade," Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), and other courts have found this DOL Bulletin to be persuasive in similar cases.  See, e.g., DiFelice, 397 F.Supp.2d at

9

751-52 ("The DOL's interpretation of ERISA, while not binding here, is nonetheless entitled to

deference depending upon 'the thoroughness evident in its consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all those factors which give

it power to persuade, if lacking power to control.'") (quoting Skidmore, 323 U.S. at 140);  In Re

WorldCom, Inc. ERISA Litigation, 354 F.Supp.2d at 444-46 (finding the DOL Bulletin entitled

to "substantial weight").[5]  Under the DOL standards, directed trustees like MLTC can be liable

for a breach of fiduciary duty where they follow directions from a named fiduciary that are not

properly given or otherwise contrary to ERISA or the Plan's provisions.  DiFelice, 397 F.Supp.2d

at 746-47.  For the reasons below, however, the Plaintiffs' claims cannot survive even under this

broader view of a directed trustee's fiduciary duties.


1.    *The Complaint Fails to Allege Facts Which, if Proven, Would Establish a Fiduciary Duty
      for MLTC to Question or Disregard the Investment Directions Provided by the Plan's
      Named Fiduciaries.*

The Plaintiffs do not allege that MLTC failed to follow any proper directions from the

_____

[5] As the WorldCom court noted:
Although the Bulletin breaks new ground by giving concrete guidance to directed
trustees about their duty to inquire into the prudence of investment decisions, the
opinions expressed in the Bulletin are well-reasoned and flow from a careful analysis
of complex issues. The Bulletin anticipates many of the central issues facing directed
trustees in deciding how to fulfill their fiduciary duties, and provides specific and
helpful example-based guidance that effectively balances important policy concerns
embodied in the ERISA statute. The Bulletin, therefore, reflects persuasive authority
to which this Court should give at least substantial weight in articulating the standard
that should be applied to a directed trustee's responsibilities when receiving a
direction to invest plan assets in particular securities, and especially directions to
invest in the securities of the employer.
In re WorldCom ERISA Litigation, 354 F.Supp.2d at 446.

Committee or Plan participants regarding the investment of Plan funds in the RCN Stock Fund, nor do they claim that MLTC acted in a manner contrary to the terms of the Plan.  The basis of the Plaintiffs' claim against MLTC is that they claim that MLTC had a duty to ignore the Plan documents and the investment directions given to them to invest Plan funds in the RCN Stock Fund on the grounds that making such "imprudent" investments were contrary to ERISA. (Compl. at 24-25, ¶¶ 97-99.)  The question before the Court is, therefore, whether MLTC, as a directed trustee, owed a fiduciary duty to the Plaintiffs under ERISA to avoid placing Plan funds in the RCN Stock Fund at any time during the Class Period.

Even under the DOL bulletin's standards, the fiduciary duty of a directed trustee is "significantly narrower than the duties generally ascribed to a discretionary trustee under common trust principles."  In re WorldCom ERISA Litigation, 354 F.Supp.2d at 446 (quoting DOL Bulletin).  The basis of the Plaintiffs' allegations against MLTC is that they breached the "duties and mandates of ERISA" by following the directions of the Plan's named fiduciaries and "continuing to allow investment of Plan assets in the RCN stock fund when it was clearly imprudent to do so."  (Compl. at 24, ¶ 98.)  The DOL Bulletin has defined a narrow set of circumstances where a directed trustee may have a duty to make an inquiry of a named fiduciary before investing plan assets as directed.  See DOL Bulletin.  According to the DOL Bulletin, there are two situations where MLTC, as a directed trustee, could have breached their duty of prudence by continuing to invest Plan funds in RCN stock as directed.  See In re WorldCom ERISA Litigation, 354 F.Supp.2d at 446 (referring to DOL Bulletin).

If MLTC had possession of material, non-public information, necessary to evaluating the prudence of investing in RCN stock, they would be held to a duty to inquire about the named

fiduciary's knowledge and consideration of the information with respect to the investment directions to place Plan funds into RCN stock holdings.  DOL Bulletin ("If a directed trustee has material non-public information that is necessary for a prudent decision, the directed trustee, prior to following a direction that would be affected by such information, has a duty to inquire about the named fiduciary's knowledge and consideration of the information with respect to the direction.").  The Plaintiffs' Complaint, however, does not allege that MLTC was in possession of any non-public information regarding RCN's financial performance.[6]  The Complaint asserts merely that MLTC should have noted the "precipitous decline" of RCN stock's value, the under-performance of RCN stock against traditional benchmarks such as the NASDAQ Stock Market Index and the NASDAQ Telecommunications Index, and the negative analyst reports of RCN

---

[6] The Complaint alleges that "Merrill Lynch's corporate affiliates also served as advisors to RCN" and were "intimately knowledgeable about the affairs of RCN," but makes no allegations that these affiliates possessed non-public information about RCN's financial state. (Compl. at 39, ¶ 153.)  Although it is not alleged in the Complaint that these affiliated companies possessed non-public information regarding the financial health of RCN, "the possession of non-public information by one part of an organization will not [generally] be imputed to the organization as a whole (including personnel providing directed trustee services) where the organization maintains procedures designed to prevent the illegal disclosure of such information under securities, banking or other laws."  DOL Bulletin.  What is required to create a duty for a directed trustee is "*actual knowledge* of material non-public information" possessed by "*individuals responsible for the directed trustee services*."  Id. (emphasis added).  While the Plaintiffs' brief alleges that MLTC possessed "non-public information concerning RCN's financial health" (Pl. Br. at 36), there is no such allegation contained in their Complaint. Plaintiffs cannot defeat MLTC's motion to dismiss by introducing key allegations in their motion when those allegations are missing from their original Complaint.  See Associated General Contractors of California v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) (holding a court may not "assume that the [Plaintiffs] can prove facts that [they] have not alleged in [their] amended complaint" in determining the merits of a 12(b)(6) motion).  See also Reichhold, Inc. v. United States Metal Ref. Co., 2004 U.S. Dist. Lexis 27634, *9 (D.N.J. Oct 27, 2004) (court is limited to facts alleged in complaint and "may not consider facts raised for the first time by parties in legal briefs") (citing Hauptmann v. Wilentz, 570 F.Supp. 351, 364 (D.N.J. 1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985)).

issued by Merrill Lynch and others.  (Compl. at 38 - 41, ¶¶ 147 - 160.)  Through this information, it is alleged, MLTC "knew or should have known that continued investment in RCN stock was not prudent."  (Id.)

All of the information cited by the Plaintiffs to form the basis of MLTC's fiduciary duty not to invest in RCN stock was publicly available.  A directed trustee who possesses the kinds of public information as alleged in the Plaintiffs' Complaint will "rarely have an obligation under ERISA to question the prudence of a direction to purchase publicly traded securities at the market price."  DOL Bulletin.  The "extraordinary circumstances" where such an obligation exists are limited to situations where there is public information which creates "clear and compelling indicators . . . that call into serious question a company's viability as a going concern."  Id. (emphasis added).  There are, however, no such "clear and compelling indicators" alleged in the Plaintiffs' Complaint.  "[B]ecause stock prices fluctuate as a matter of course, even a steep drop in a stock's price would not, in and of itself, indicate that a named fiduciary's direction to purchase or hold such stock is imprudent and, therefore, not a proper direction."  Id. Similarly, "media or other public reports or analyses that merely speculate on the continued viability of a company" are insufficient to trigger an obligation by a directed trustee to question a named fiduciary's investment decisions.  Id.  Accordingly, none of the "extraordinary circumstances" are alleged to have existed which would have imposed a duty on MLTC not to follow the directions of the Plan's named fiduciaries to invest in and hold RCN stock as a Plan investment.

2.    *As a Directed Trustee, MLTC Did Not Have a Duty to Communicate Negative Public Information Regarding RCN's Financial Status to Plan Participants.*

The Plaintiffs also allege that MLTC breached their fiduciary duty by failing to communicate to Plan participants the "imprudence of investment in [RCN] stock" despite their regular communications with the Plan participants. (Compl. at 41-42, ¶ 165.)  The Plaintiffs' brief also alleges that MLTC breached its fiduciary duty by failing to take the "base step of informing Plan participants that one of its fellow Merrill Lynch subsidiaries was advising institutional investors not to invest in RCN stock because it was too speculative."  (Pl. Br. at 38.)

As a directed fiduciary, however, MLTC was under no such obligation.  As noted above, the only material information alleged to have been possessed by MLTC was public information regarding RCN's financial status, including analyst reports and the current trend of RCN's stock price.  Stock prices, public filings, and analyst reports, even those prepared by a 'fellow Merrill Lynch subsidiary,' are all publicly available information.  While an obligation exists for directed trustees to disclose non-public information that they possess to named fiduciaries prior to following investment decisions that may be affected by that information, no such duty exists to disclose publicly available information.  See DOL Bulletin ("The directed trustee [does] not have an obligation to disclose reports and analyses that are available to the public.").  MLTC, therefore, was under no duty to disclose publicly available information to Plan participants regarding RCN's financial state or the prudence of investing in RCN stock.


3.    *The Plaintiffs' Complaint Fails to State a Claim Against MLTC for Co-Fiduciary Liability*

14

Section 405(a) of ERISA recognizes that a fiduciary may be liable for breaches of duty committed by other fiduciaries:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). The Plaintiffs' Complaint tracks the language of the statute by generally alleging that all the Defendants in this case were liable as co-fiduciaries by violating all three scenarios of co-fiduciary liability under § 1105(a). (Compl. at 60, ¶ 229.) To sustain a claim under § 1105(a)(2), however, the Plaintiffs' must first allege facts sufficient to find that MLTC breached their fiduciary duty as a directed trustee of the Plan. Since, for the reasons noted above, MLTC has not breached their fiduciary duties as a directed trustee, this claim is unsustainable. See DiFelice, 397 F.Supp.2d at 757 ("Where, as here, a directed trustee is not alleged to have violated his exclusive duties, but to have failed to object to the named fiduciary directions, a directed trustee's primary liability as a fiduciary, and its secondary liability as a co-fiduciary are essentially coextensive.").

The Plaintiffs' § 1105(a)(1) claim is similarly unsustainable. Plaintiffs make no effort to allege any scenario where MLTC participated or knowingly concealed any known breach of fiduciary duties of any other Plan fiduciary. The substance of the Plaintiffs' allegation under § 1105(a)(1) is that all Defendants "knowingly participat[ed] in, or knowingly undertook to conceal the failure to prudently and loyally manage the Plan's assets with respect to offering Company stock as an investment option in the Plan, . . . despite knowing that such failure was a

15

breach." (Compl. at 53, ¶ 205.)  This is, in essence, a restatement of the Plaintiffs' claim that

MLTC breached its fiduciary duty by continuing to follow investment directions given to them

by the Committee to invest Plan funds in RCN stock when they knew or should have known that

the continued investment in RCN stock was imprudent.  For the reasons noted above, however,

the MLTC's mere compliance with the investment directions to invest Plan funds in RCN stock

was not a breach of fiduciary duty and the Plaintiffs have failed to allege sufficient extraordinary

circumstances whereby MLTC's continued compliance with these directions would constitute

such a breach.  As the Enron court held:

> If the directed trustee follows 'proper' directions of the named fiduciary with respect
> to that part of the plan management or control granted to the named fiduciary, and if
> those directions are 'in accordance with the terms of the plan' and 'not contrary to'
> ERISA under § 403(a)(1), the directed trustee is not liable for a co-fiduciary's (the
> named fiduciary's) breaches.

In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F.Supp.2d 511, 184-85 (S.D.Tex.

2003).  The declining stock price and negative analyst reports alleged by the Plaintiffs are

insufficient to create a duty for MLTC to question the prudence of the directions to invest Plan

funds in RCN stock - or to impart sufficient knowledge to MLTC that such an investment

direction constituted a breach of any co-fiduciary's duty either.[7]  As the WorldCom court noted,

"[u]nless the [P]laintiffs can show that [MLTC] knew or should have known that an investment

in [RCN] securities was imprudent . . . then its understanding of [the named fiduciary's]

---

[7] While the alleged facts in the Plaintiffs' Complaint do not give MLTC sufficient
knowledge that the investment directions from the Committee to put Plan funds into RCN stock
were unwise or a breach of the Committee's fiduciary duty, MLTC also had no affirmative duty
as a directed trustee "to investigate the manner in which [the named fiduciaries] administered the
Plan, and had no duty to inquire whether the [named fiduciaries] w[ere] undertaking prudent
reviews of the Plan's holdings."  In re WorldCom ERISA Litigation, 354 F.Supp.2d at 450.

16

performance of its fiduciary functions is beside the point."[8]  Id.

The Plaintiffs also present a specific allegation of co-fiduciary under § 1105(a)(3), claiming that MLTC (and the other named Defendants) "knew or should have known that incomplete information had been provided by the Plan's other fiduciaries, yet failed to undertake any action to remedy this breach."  (Id. at 60, ¶ 230.)  The Complaint, however, does not allege any factual underpinning to support their legal conclusion that MLTC breached its duties under § 1105(a)(3).  The Complaint asserts that, during the Class Period, RCN made various public statements, forecasts, and filings to the Plan participants and others that "fostered a positive attitude toward the Company's stock, and/or allowed Participants in the Plan to follow their natural bias towards investment in the equities in their employer."  (Compl. at 40-43, ¶¶ 161-168.)  These statements, it is presumed, are in contrast to the continued decline in RCN's stock price during the Class Period, and the Company's eventual bankruptcy.  Even if, as the Plaintiffs allege, these communications were "inaccurate, incomplete and materially misleading" (Compl. at ¶ 42, 164),  there are no facts alleged that MLTC had any knowledge that these communications were inaccurate or misleading or that the Company, through these communications, was breaching any fiduciary duty to Plan participants.  Accordingly, MLTC was under no duty to take corrective action under § 1105(a)(3).

---

[8] The ERISA requirement that a directed trustee like MLTC have knowledge of a named fiduciary's breach in order to impose liability for the named fiduciary's breach is similar to the common law's requirements.  As the RESTATEMENT (SECOND) OF TRUSTS notes:

> Even though the person holding the power holds it as a fiduciary and in fact violates his duty as a fiduciary in the exercise of the power, the trustee is not liable for acting in accordance with the exercise of the power if he has no notice that the holder of the power is violating his duty as fiduciary.

RESTATEMENT (SECOND) OF TRUSTS § 185 cmt. e. (1959).

4.      *The Facts Alleged in the Plaintiffs' Complaint Fail to State That MLTC Operated Under an Actionable Conflict of Interest.*

Count IV of the Plaintiffs' Complaint claims that MLTC "was guided by its own financial interests, and by the draw of continued business, rather than by the fiduciary tenet of protecting the Plan and the Trust" (Compl. at 47 - 48, ¶ 187), and that MLTC "breached its duty to avoid conflicts of interest and promptly to resolve them." (Compl. at 62, ¶ 238.) The Court, however, cannot agree with the Plaintiffs implication that MLTC's position, as a compensated trustee for RCN's ESOP plan, created a *per se* conflict of interest that MLTC had an affirmative duty to avoid. MLTC was indeed retained by the Committee (whose members were appointed by RCN) and appropriately compensated for its services as a trustee of the Plan. The only way for a professional trustee such as MLTC, who is selected and retained by a company to administer a savings and retirement plan that invests in that company's stock, to affirmatively avoid the conflict of interest that the Plaintiffs' are implying, however, would be to provide their services for free.

ERISA clearly did not intend for such a consequence. ERISA expressly allows ESOP plans that invest primarily in the stock of the sponsoring company. See Moench, 62 F.3d at 571 (finding ERISA provides "statutory acknowledgment of the terms of ESOP trusts"); Martin v. Feilen, 965 F.2d 660, 670 (8th Cir. 1992) (finding that ERISA's fiduciary requirements must be interpreted with the acknowledgment "Congress intended an ESOP to be a 'technique of corporate finance'"). ERISA also explicitly allows professional trustees, like MLTC, to receive reasonable compensation for their services in administering ESOP plans. See 29 U.S.C. §

1108(b).  The Court, therefore, cannot find that MLTC, or any similarly situated professional trustee, operates under an actionable *per se* conflict of interest simply by acting as a compensated trustee for a company's ESOP Plan.

The Plaintiffs' Complaint also fails to sufficiently allege that MLTC, through any of their actions during the Class Period, placed whatever interests they may have had in maintaining their position with the Committee and RCN before those of the Plan's participants.  As a trustee, MLTC had a duty to "exclude all selfish interest and all considerations of the interests of third persons in carrying out his duties," and ERISA does not "sanction any derogation from the[se] strict fiduciary requirements."  Delta Star, Inc. v. Patton, 76 F.Supp.2d 617, 636 (citing McMahon v. McDowell, 794 F.2d 100, 110 (3d Cir. 1986)).  As noted above, however, the Plaintiffs' Complaint fails to state a claim that MLTC's actions violated its fiduciary duty to the Plan participants.  Accordingly, this claim is dismissed as well.

## III.   CONCLUSION

For the reasons stated above, and for good cause shown, the Court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  An appropriate form of order will be filed herewith.

Date:   March 21, 2006

  s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

19